In the Matter of the Estate of ANTHONY L. LUPOSELLO, Deceased. RONALD LUPOSELLO et al., Respondents; BERNICE DEROCCO et al., Appellants. [639 NYS2d 83]

The petitioner Alfred Luposello (hereinafter the petitioner), the son of the decedent, commenced this proceeding against his two sisters (hereinafter the appellants), *inter alia,* to determine their rights under the provision of their late father's will which called for the distribution of the decedent's main as-

set, his stock in Luposello's Garage, Inc. (hereinafter the corporation). The corporation owned a motor vehicle garage and body repair shop which the petitioner, his two brothers, Anthony R. and Ronald Luposello, and father had operated since the 1960's. The certificate of incorporation indicated that, of the corporation's 200 shares, the decedent owned 100 shares and Anthony R. and Ronald owned 50 shares each. In his will, the decedent, after noting that he then owned 51% of the outstanding shares of the corporation, bequeathed to the petitioner 24.5% and to the appellants 13.25% each of his percentage. However, it is not disputed that the decedent actually owned only 50% of the outstanding shares. Therefore, this proceeding was commenced to determine the parties' rights under this provision of the will.

In interpreting a will, the "prime consideration" is the intent of the testator (see, Matter of Larkin, 9 NY2d 88; see also, Matter of Jones, 38 NY2d 189; 39 NY Jur 2d, Decedents' Estates, § 696). The best evidence of such intent is the clear and unambiguous language of the will itself (see, Matter of Larkin, supra; Matter of Smith, 90 AD2d 905, affd 60 NY2d 864). In general, extrinsic evidence is not permitted to vary, contradict or add to the terms of a will or to show an intention different than that disclosed by the language employed (see, Brown v Quintard, 177 NY 75; Margulis v Teichman, 127 Misc 2d 168). However: " 'it may be admitted that in all cases in which a difficulty arises in applying the words of a will to a thing which is the subject-matter of the devise or to the person of the devisee,' the difficulty or ambiguity which is introduced by the admission of extrinsic evidence, may be rebutted and removed by the production of further evidence upon the same subject calculated to explain what was the estate or subject-matter really intended to be devised, or who was the person really intended to take under the will" (Lefevre v Lefevre, 59 NY 434, 443, quoting 1 Redf on Wills, 575, ch 10, § 40, pl. 2; see also, Matter of Wells, 113 NY 396; 39 NY Jur 2d, Decedents' Estates, §§ 696, 698). Here, because the decedent's erroneous belief that he owned 51% of the outstanding shares of the corporation rather than 50% created a latent ambiguity in the will and prevented the application of its provisions as written, the Surrogate properly permitted the use of extrinsic evidence to glean the decedent's intent (cf., Matter of Bradley, 38 Misc 2d 945).

Initially, we agree with the Surrogate that the phrase in the will "I direct that my interest of fifty-one (51%) per cent be prorated and be bequeathed to my following children in the percentages hereinafter set forth" is susceptible to only one in-

terpretation—i.e., that the decedent intended to dispose of all of his interest in the corporation to the devisees listed. Thus, the only issue presented is whether the Surrogate correctly interpreted the decedent's intent as to the percentages to be bequeathed to each devisee. We believe that he did.

As noted by the Surrogate in his decision dated August 20, 1993, under the decedent's erroneous belief that he owned 51% of the outstanding shares of the corporation, he would have owned 102 shares and his sons Anthony R. and Ronald would have each owned 49 shares. Thus, his bequest of 24.5% of his 51% share in this corporation to the petitioner would have resulted in the petitioner receiving 49 shares, an amount equal to that of his brothers. Such a result would be supported by the fact that the three brothers were the parties actually operating the garage and the fact that neither Ronald nor Anthony R. received any stock under the will. Accordingly, it is both logical and reasonable to believe that the decedent would have intended that the formula set out in his will would be applied to the correct figures in a manner so as to arrive at the same result. Thus, by extrapolation, the Surrogate properly interpreted the will to bequeath upon the petitioner 50 shares or 25% of the corporation's stock, an amount equal to that of his brothers, with the balance of the stock going to the appellants.

The respondents also argue that the court improperly removed their attorney, Andrew Fiore, as trustee of a voting trust to be established under the terms of the will. However, the Surrogate did not remove Fiore as trustee. Rather, it is clear from the record that Fiore resigned as trustee.

Finally, we note that there is an apparent scrivener's error in the order appealed from. The order directed that the petitioner was to receive 25 shares of stock and each appellant 12.5 shares of stock. It is clear, however, based on the Surrogate's decision dated August 20, 1993, that the correct figures should be 50 shares of stock to the petitioner and 25 shares of stock to each appellant. We therefore modify the order accordingly. Mangano, P. J., Miller, Ritter and Pizzuto, JJ., concur.